IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LIZA MARTINEZ, et al.,          :     CIVIL ACTION
                                :     NO.  09-1236
        Plaintiffs,             :
                                :
           v.                   :
                                :
CITY OF PHILADELPHIA, et al.,   :
                                :
        Defendants.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 8, 2013


        Before the Court is Plaintiff Liza Martinez's and
Intervenor Ismael Feliciano's Joint Motion to Approve Settlement
and to Release Funds to Plaintiff's Counsel, as well as
Plaintiff's counsel's second petition for costs and expenses.
Plaintiff is represented by Rania Major-Trunfio. Intervenor is
represented by Philip Blackman.


**I. BACKGROUND**

        Liza Martinez (Plaintiff) brought survival and
wrongful death actions following the death of Andres Ivan
Feliciano, a minor suffering from cerebral palsy and under the
custody of certain defendants at the time of his death.
Defendants Best Nest, Inc., Loretta Hughson, Pedicraft, Inc.,
Susquehanna Valley Mobility Services Inc., and Frank Hughson

(collectively, Defendants) entered into a $550,000 settlement agreement with Plaintiff, which this Court approved as fair and just. Andres's father, Ismael Feliciano (Intervener), intervened in this matter, seeking a portion of the settlement funds. Defendants deposited the agreed-upon amount in the Registry of the Court.

The Court, in an order dated October 25, 2012 (ECF No. 211), granted in part and denied in part Plaintiff's Petition for Approval of Distribution of the Settlement (ECF No. 205). The Court approved an allocation of the settlement funds as follows: first, to Plaintiff's counsel, 40% before deducting costs, per Plaintiff's agreement with counsel; second, after deducting costs, 70% of the remainder to the wrongful death action and 30% to the survival action; and third, 100% of the wrongful death action proceeds to Plaintiff and the survival action proceeds split evenly between Plaintiff and Intervenor. Id. Therefore, after attorney's fees and costs, 85% of the remainder to Plaintiff and 15% of the remainder to Intervenor.

The Court also conditionally approved $94,811.09 in litigation costs to be paid to Plaintiff's counsel in the event she provided verification, but her receipts fell short of that amount. They instead accounted for $76,990.02. The Court granted Plaintiff's counsel leave to submit additional receipts, and she did on February 18, 2013.

Meanwhile, Intervenor appealed the portion of the Court's allocation order permitting distribution of all the wrongful-death proceeds to Plaintiff. But he withdrew the appeal after coming to an agreement with Plaintiff that Intervenor would be entitled to $25,000 of the wrongful death proceeds in addition to the Court-approved amount. The parties then filed a joint motion to release all the funds to Plaintiff's counsel, citing the above-mentioned agreement. The Court denied the motion and required any request to alter its approved settlement allocation to be made by motion setting forth the basis for such a deviation and supply evidence that Plaintiff has approved it. See Order, Jan. 9, 2013, ECF No. 217. Plaintiff and Intervenor complied and submitted the Joint Motion to Approve Settlement and to Release Funds to Plaintiff's Counsel.

On February 28, 2013, the Court held a hearing to consider the present motion, as well as Plaintiff's counsel's second petition for litigation costs and expenses. At the hearing, the Court afforded Plaintiff and Intervenor the opportunity to present evidence and argue that the new agreement was fair and just. Also, the Court permitted Plaintiff's counsel to point to evidence demonstrating she should be reimbursed for the requested amount of litigation costs. She did so; in response, the Court highlighted deficiencies in her proffered evidence and argument, which are discussed at length in Part IV

infra. She adequately addressed some but not all of these deficiencies, and her response is also summarized in Part IV.

## II. APPLICABLE LAW

Pennsylvania Orphans' Courts usually adjudicate settlement approvals and allocations involving juvenile estates, but federal courts may nevertheless exercise jurisdiction over these actions under supplemental jurisdiction. See Smith v. Sandals Resorts Int'l, Ltd., 709 F. Supp. 2d 350 (E.D. Pa. 2010), aff'd, 437 F. App'x 178 (3d Cir. 2011); Stecyk v. Bell Helicopter Textron, Inc., 53 F. Supp. 2d 794 (E.D. Pa. 1999) (Robreno, J.), aff'd, 295 F.3d 408 (3d Cir. 2002).

Although proceeding in federal court, the Court must apply Pennsylvania substantive law governing the allocation of settlement funds and the approval of attorney's fees. The "settlement of a lawsuit and the relationship between an attorney and his or her client are areas traditionally covered by state law." Mowrer v. Warner-Lambert Co., 2000 WL 974394, at *5 (E.D. Pa. July 13, 2000); see also Nice v. Centennial Sch. Dist., 98 F. Supp. 2d 665, 668 (E.D. Pa. 2000) (holding a federal court may apply state law if state law on an issue is well-developed, federal law does not provide a rule of decision, and application of state law will not impinge upon any federal interest).

**III. MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Intervenor has withdrawn his appeal of the Court's Order preventing him from receiving any wrongful-death proceeds. In exchange, Plaintiff and Intervenor have come to a "settlement agreement," in which they agree that Intervenor would be entitled to $25,000 of the wrongful-death proceeds in addition to the amount he is already entitled. See Joint Mot. 2. The parties also request that the Court release all funds to Plaintiff's counsel for distribution.

In its Order scheduling a hearing on the matter, the Court required that Plaintiff be present, so it could ensure that she has approved the proposed, revised distribution. See Order, Jan. 9, 2013. At the hearing, the Court questioned Plaintiff on whether she had voluntarily agreed to settle the case on the stated terms and conditions. The Court is satisfied that Plaintiff agreed to pay Intervenor an additional $25,000. In light of that, the Court will approve the settlement agreement. However, the funds will be released according to the Court's approved settlement allocation. See Order, Oct. 25, 2012.

**IV. Plaintiff's Counsel's Second Request for Litigation Costs**

Pursuant to the Court's Order dated January 9, 2013, which only approved $76,990.02 in reimbursement for litigation

costs and expenses, see Order, Jan. 9, 2013, Plaintiff's counsel has resubmitted her receipts in the hope of obtaining the requested $94,811.09.

After reviewing all of Plaintiff's counsel's submitted receipts, the Court determines that she is now entitled to $82,249.72, $12,561.37 less than requested. See Ex. A. The increase is primarily because she now attaches documentation to her mileage-expense request that specifies her distance traveled during litigation.[1] But she fails to account for the full, requested amount. All her itemized expenses, including those without supporting documentation, total $83,023.84. Furthermore, $1599.42 worth of her itemized costs does not have supporting documentation.[2] Accordingly, the difference shall be distributed between Plaintiff and Intervenor according to the formula set forth in the Court's Order dated October 25, 2012.

---

[1]     Plaintiff's counsel claims that she undercharged her mileage in the initial Affidavit of Costs, which provides for a rate of .558 cents per mile. See Affidavit of Costs 2, ECF No. 213. But she is now willing to apply that rate. See Second Affidavit of Costs 1. The rate was used in calculating her mileage, and the resulting amount is $3677.22. That amount is included in the approved reimbursement.

[2]     The Court initially excluded certain luxury items from the calculation, including travel insurance ($27), flight upgrades ($38), excess baggage fees ($50), food expenses exceeding a $100 per diem ($48.13), and a luggage purchase ($149.04). However, at the hearing, Plaintiff's counsel orally justified these expenses and the amounts are now included in the reimbursement.

**IV. CONCLUSION**

In light of the Plaintiff's and Intervenor's settlement agreement and the reduction in reimbursement to Plaintiff's counsel, the Court finds that Plaintiff is entitled to $183,056.24, Intervenor is entitled to $61,941.04, and Plaintiff's counsel is entitled to $302,249.72. <u>See</u> Ex. A. Amounts of $2310 and $443 shall be held in escrow to satisfy funeral expenses and a Department of Public Works lien, respectively. <u>See</u> <u>id</u>. An accompanying order shall follow.

**EXHIBIT A—SETTLEMENT-FUND DISTRIBUTION**

**Overall settlement amount:** $550,000

**Attorney's fees to Plaintiff's Counsel:** $220,000

**Litigation costs reimbursed to Plaintiff's Counsel:** $82,249.72

**Wrongful Death Action:** $173,425.20

    Funeral Expenses: $2310

    **Liza Martinez:**    $146,115.20

    **Ismael Feliciano:** $25,000

**Survival Action:**    $74,325.08

    DPW lien:    $443

    **Liza Martinez:**    $36,941.04

    **Ismael Feliciano:** $36,941.04

**Total for Liza Martinez: $183,056.24**

**Total for Ismael Feliciano: $61,941.04**

**Total for Plaintiff's Counsel: $302,249.72**